IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00114-MEH

JESSE DILLON KIRCHNER,

      Plaintiff,

v.

JILL MARSHALL,
ARVADA POLICE DEPARTMENT,
PHILIP JAMES MCNULTY, Judge,
MIRIAM STOHS, and
LAW OFFICES OF RACHEL A. OLIVER LLC, Former Chief Deputy Public Defender for
Jefferson County,

      Defendants.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court are Plaintiff's Motion for Preliminary Injunction [filed June 15, 2020; ECF 44], Defendant Arvada Police Department's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b) [filed April 17, 2020; ECF 25], and a Motion to Dismiss filed by Defendants Jill Marshall, Judge Philip James McNulty, Miriam Stohs, and Rachel A. Oliver (collectively, the "State Defendants") [filed April 29, 2020; ECF 33]. The Court discussed Plaintiff's motion for injunctive relief with the parties at a Status Conference on July 13, 2020 (ECF 52). For the following reasons, the Court will deny the Plaintiff's motion and grant the Defendants' motions.

## BACKGROUND

I.    **Procedural History**

      Plaintiff, proceeding pro se, initiated this action pursuant to 42 U.S.C. § 1983 on January 13,

2020, alleging seven claims for relief: (1) false arrest in violation of the Fourth Amendment; (2) double jeopardy in violation of the Fifth Amendment; (3) ineffective assistance of counsel in violation of the Sixth Amendment; (4) cruel and unusual punishment in violation of the Eighth Amendment; (5) denial of equal protection in violation of the Fourteenth Amendment; (6) criminal acts including kidnapping; and (7) negligence and/or denial of procedural due process ("state inaction") in violation of the Fourteenth Amendment.   ECF 1.   Defendants responded to the Complaint by filing the present Motions to Dismiss on April 17, 2020 and April 29, 2020.   ECF 25, 33.   At a preliminary status conference on May 14, 2020, the Court noted Plaintiff's detention status (i.e., commitment at the Colorado Mental Health Institute in Pueblo, Colorado ("CMHIP")) and directed the parties, including CMHIP representatives, to provide the Court with information concerning Plaintiff's competency to proceed in this case.   ECF 40.   The next day, Defendants filed an unopposed motion seeking a temporary stay of discovery pending resolution of the Defendants' dispositive motions; the Court granted the motion on May 19, 2020.   ECF 42.   Plaintiff filed the present motion for preliminary injunction on June 15, 2020, and Defendants timely filed responses on July 6, 2020.   ECF 44, 50, 51.   Meanwhile, the Court received information, including medical records and letters from Plaintiff's treating health providers, concerning Plaintiff's competency.   At a status conference on July 13, 2020, the Court discussed with the parties proceeding with the case. ECF 52.   The Court is now fully advised and will proceed to address the pending motions.

## II.      Statement of Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in the operative Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6).   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is currently in the custody of the CMHIP; he was committed after serving a sentence in the Colorado Department of Corrections ("CDOC").

On November 18, 2011, Plaintiff was arrested and charged with Attempted Murder and several counts of assault after being accused of stabbing his twin brother in the abdomen.  Following a psychiatric evaluation on May 2, 2013, Dr. John DeQuardo found Plaintiff to be sane.  On December 5, 2013, Jefferson County District Court in Golden, Colorado entered a Plea Agreement ("split plea"), which contained the following terms: a finding of not guilty by reason of insanity ("NGRI") to Assault in the First Degree in violation of Colo. Rev. Stat. §18-3-202(1)(a) (second count), and a plea of guilty to Assault in the Second Degree, Drugging Victim, in violation Colo. Rev. Stat. §18-3-203(l)(e) (fifth count).  The Prosecution did not contest the issue of insanity on the second count and, as a stipulation for the NGRI plea, Plaintiff was instructed to plead guilty to the fifth count.  Plaintiff waived a factual basis and his right to any appeal on the fifth count, and received a four-year sentence in the CDOC.  After completing his CDOC sentence, he was committed to the Department of Human Services at CMHIP "until restored to sanity for a sentence of one day to life," as a result of the NGRI adjudication.

On April 25, 2018, the Chief Executive Officer of CMHIP filed a "Notice of Temporary Physical Removal for Treatment and Rehabilitation - Increase to Supervised."  Deputy State Public Defender Garen Gervey entered his appearance on Plaintiff's behalf on May 7, 2018.  On May 17, 2018, Plaintiff filed a *pro se* Petition for Post-Conviction Relief Pursuant to Crim. P. 35(c) arguing that a "split plea" violates Double Jeopardy and is a cruel and unusual punishment that violates his due process and equal protection rights; he requested a hearing and counsel to represent him.

On July 11, 2018, Mr. Gervey moved to withdraw based on a conflict of interest, in that

Plaintiff was represented by Defendant Deputy State Public Defender Miriam Stohs when he entered into the plea agreement. The court granted the motion to withdraw and appointed Alternate Defense Counsel ("ADC") Jennifer Melton[1] to represent Plaintiff on July 17, 2018. The court's order is on a standard form and does not indicate whether the court had appointed Melton to represent Plaintiff for his post-conviction proceeding, the temporary physical removal for treatment and rehabilitation proceeding, or both. On July 19, 2018, the Honorable Judge Philip McNulty denied Plaintiff's post-conviction petition and request for counsel.

On July 25, 2018, Defendant ADC Rachel Oliver substituted as counsel for Plaintiff. The court set a hearing on the temporary physical removal for treatment and rehabilitation proceeding for September 10, 2018. Meanwhile, on August 16, 2018, Plaintiff filed a *pro se* motion for reconsideration of the denial of his post-conviction petition, in which he argued that he was entitled to a hearing. On August 29, 2018, ADC Margaret Baker substituted as counsel for Plaintiff since Oliver worked in the same office as Gervey and Stohs. The court denied Plaintiff's motion for reconsideration on August 30, 2018 saying, "The Court does not accept pro se filings from litigants represented by counsel." Plaintiff believes that a notice of appeal, based on the court's July 19, 2018 denial of the post-conviction motion, was due to be filed by September 6, 2018.

On September 6, 2018, a district attorney filed an "amended response" withdrawing her previous objection to the Notice of Temporary Physical Removal for Treatment and Rehabilitation, and the court vacated the September 10, 2018 hearing.

On November 2, 2018, Baker notified the Office of Alternate Defense Counsel of the missed deadline for filing Plaintiff's appeal. Baker subsequently provided an affidavit regarding the potential reasons for the missed deadline and filed a motion for Plaintiff to proceed in forma

---

[1]Plaintiff alternates between two spellings, "Melton" and "Milton."

pauperis on appeal.  Robin M. Lerg was appointed as Plaintiff's ADC for his appeal and filed an opening brief on February 28, 2019, in which she raised the following issues: (1) "the trial court erred in summarily denying Mr. Kirchner's Crim. P. 35(c) Motion while he was represented by counsel," and (2) "this Court must remand to correct the judgment of conviction, sentence to reflect a plea of Not Guilty by Reason of Insanity of First-Degree Assault with a deadly weapon causing serious bodily injury  (Clerical Error)."

## LEGAL STANDARDS

### I.      Treatment of a Pro Se Litigant's Pleadings

A pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean, if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant."  *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

## II.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008) (recognizing federal courts are courts of limited jurisdiction and "there is a presumption against our jurisdiction"). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013). A motion to dismiss under Rule 12(b) "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015). Accordingly, Plaintiff bears the burden in this case of establishing that this Court has jurisdiction to hear her claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th 1995).

> First, a facial attack on the complaint's allegations as to subject-matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject-matter jurisdiction depends. When reviewing a factual attack on subject-matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002–03 (citations omitted); *see also Pueblo of Jemez*, 790 F.3d at 1148 n.4. The present motion launches both a facial attack (federal claims) and a factual attack (state law claims) on this

Court's subject-matter jurisdiction; therefore, the Court will accept the Complaint's factual allegations as true for its Rule 12(b)(1) analysis of the federal claims, but not for the state claims.

### III.   Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of

each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## ANALYSIS

### I.       Plaintiff's Motion for Preliminary Injunction

To obtain a preliminary injunction, "the moving party must demonstrate four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *Carranza v. Reams*, – F. Supp. 3d –, 2020 WL 2320174, at *6 (D. Colo. May 11, 2020) (quoting *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009)). Plaintiff must make a "heightened showing of the four factors," because he seeks a disfavored mandatory injunction – the request for relief would "alter the status quo" by requiring defendant to take affirmative actions. *Id.* (citing *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005); *see also Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792,

797 (10th Cir. 2019) (holding that plaintiff must make a "strong showing" in order to obtain an injunction that "mandates action").

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. *See* Civil Cover Sheet & Compl., ECF 1 at 8, 9. Through the present motion, Plaintiff seeks an order requiring Defendants to "immediate[ly] release [him] from the civil commitment to the Department of Human Services at Colorado Mental Health Institute in Pueblo, Colorado." Mot. at 10. The Court finds Plaintiff's likelihood of success on the merits of this request to be minimal, if not non-existent; the requested injunction is, in essence, a request for relief through habeas corpus. "A prisoner may use § 1983 to challenge the *conditions* of his confinement, but habeas corpus is the only avenue for a challenge to the *fact or duration* of confinement, at least when the remedy requested would result in the prisoner's immediate or speedier release from that confinement." *Boutwell v. Keating*, 399 F.3d 1203, 1209 (10th Cir. 2005) (emphasis in original). Therefore, because Plaintiff must seek the relief requested here in a habeas action, his motion will be denied.[2] *See id.* ("Because a prisoner's claim necessarily challenges the fact or duration of confinement when the remedy sought is the immediate or speedier release from confinement, such a claim must be brought under habeas.").

Notably, Plaintiff has already sought the same relief through two habeas corpus actions in this Court. First, in 18-cv-02035-LTB, Plaintiff filed an Application for Writ of Habeas Corpus, then an Amended Application on August 27, 2018, seeking the following relief: "immediate

---

[2]"[F]ederal habeas corpus review may be available to challenge the legality of a state court order of civil commitment or a state court order of civil contempt." *Duncan v. Walker*, 533 U.S. 167, 176 (2001) (citing *Francois v. Henderson*, 850 F.2d 231 (5th Cir. 1988) (entertaining a challenge brought in a federal habeas petition under § 2254 to a state court's commitment of a person to a mental institution upon a verdict of not guilty by reason of insanity)); *see also Calhoun v. Attorney Gen. of Colo.*, 745 F.3d 1070, 1073 (10th Cir. 2014) ("Commitment to a mental institution or incarceration as the result of a civil contempt order may also meet the custody requirement" to seek habeas relief).

discharge from the Forensic Commitment and Release from Colorado Mental Health Institute Pueblo (CMHIP)."  ECF 4 at 28.  The Honorable Lewis T. Babcock declined to find Plaintiff's Application untimely because "too many variables exist with regard to Applicant's mental health capacity for the Court to find that equitable tolling is not warranted."  ECF 17 at 4.  However, Judge Babcock dismissed the Application without prejudice for Plaintiff's failure to exhaust state court remedies. *Id.* at 8.

Thereafter, in 19-cv-01829-LTB-GPG, Plaintiff filed an Application for Writ of Habeas Corpus, then an Amended Application alleging four claims for relief: (1) the "split plea" subjected him to double jeopardy; (2) ineffective assistance of counsel; (3) cruel and unusual punishment arising from "TWO separate sentences for the same crime"; and (4) violations of his due process and equal protection rights arising from his "involuntary commitment to a mental hospital."  ECF 8. Plaintiff sought the following relief: "issue a Writ of Habeas Corpus directing the Department of Human Services to Unconditionally Release the Applicant from it's [sic] Custody at the Colorado Mental Health Institute Pueblo and/or to any and all other just relief to which the Applicant may be entitled."  *Id.* at 17.

On March 25, 2020, Judge Babcock accepted the recommendation of the Honorable Gordon P. Gallagher to deny the Application as untimely.  ECF 17.  Magistrate Judge Gallagher found that the judgment convicting the Plaintiff became final  on either December 5, 2013 or January 23, 2014, but Plaintiff did not file a post-conviction motion until May 17, 2018, well past the one-year statute of limitation; further, Plaintiff could not rely on his mental status to lengthen or toll the limitations period, since he alleged that he was "determined to be sane during a psychiatric evaluation" on May 2, 2013, and Plaintiff did not allege other "rare and exceptional circumstances" that would justify equitable tolling.  ECF 16 at 6-11.  The action was dismissed with prejudice.  ECF 17.

In sum, the Court finds Plaintiff's request for injunctive relief—i.e., immediate release from commitment to the CMHIP pursuant to a plea agreement and conviction—is not properly sought in an action pursuant to 42 U.S.C. § 1983, but must be requested through habeas corpus. Accordingly, there is no likelihood of success on the merits and Plaintiff's motion is denied.

## II.    Arvada Police Department's Motion to Dismiss

Construed liberally, the Complaint appears to allege only the "First Cause of Action" for false arrest in violation of the Fourth Amendment and the "Sixth Cause of Action" for kidnapping in violation of Colo. Rev. Stat. § 18-3-301 against Defendant Arvada Police Department ("APD").[3] APD seeks dismissal of these claims arguing they are barred by the statute of limitations, by the "favorable termination rule" announced in *Heck v. Humphrey*, 512 U.S. 477, 484 (1994), and—with respect to the state law claim—by the Colorado Governmental Immunity Act. In addition, APD contends that Plaintiff fails to allege a claim pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Plaintiff counters that his claims have not begun to accrue because he remains "illegally" detained and *Heck* does not apply because the state court had no jurisdiction at the time of his plea agreement and sentence.[4] APD replies that Plaintiff's admissions regarding his pre-detention hearings belie his argument that he was illegally detained.

---

[3]Plaintiff seeks declaratory relief as well as compensatory and punitive damages against APD. Compl. at 24. No allegation supports claims for double jeopardy, ineffective assistance of counsel, cruel and unusual punishment (specifically challenging his criminal sentence), due process and equal protection (specifically challenging the not guilty plea), and "state inaction" against APD.

[4]Plaintiff asserts that he never received a copy of APD's renewed motion to dismiss (ECF 25), but only had possession of the original motion to dismiss filed on February 20, 2020 (ECF 8). Resp. at 2. The Court finds that, with the exception of some minor formatting changes, the motions at ECF 8 and ECF 25 are identical.

A.   Statutory Claim for "Kidnapping"

APD argues, "[t]o the extent Plaintiff alleges claims under state or common law, such claims are barred by the Colorado Governmental Immunity Act (CGIA)." Mot. at 7. The Court has construed Plaintiff's sixth claim for relief as alleging both state (Colo. Rev. Stat. § 18-3-301) and federal (18 U.S.C. § 42) claims for "kidnapping" against APD. Compl. ¶¶ 98-114. Plaintiff's claims are not viable, however, because the criminal statutes on which they are based do not provide a private cause of action.[5] *See Tucker v. United States Court of Appeals for Tenth Circuit*, No. 20-7003, 2020 WL 2535934, at *1 (10th Cir. May 19, 2020) ("Such claims [pursuant to 18 U.S.C. §§ 241-242] lack a basis in the law because these statutes do not afford [plaintiff] a private right of action."). The state statute on which Plaintiff relies provides,

> (1) Any person who does any of the following acts with the intent thereby to force the victim or any other person to make any concession or give up anything of value in order to secure a release of a person under the offender's actual or apparent control commits first degree kidnapping:
>
> (a) Forcibly seizes and carries any person from one place to another; or
>
> (b) Entices or persuades any person to go from one place to another; or
>
> (c) Imprisons or forcibly secretes any person.
>
> (2) Whoever commits first degree kidnapping is guilty of a class 1 felony if the person kidnapped shall have suffered bodily injury; but no person convicted of first degree kidnapping shall suffer the death penalty if the person kidnapped was liberated alive prior to the conviction of the kidnapper.
>
> (3) Whoever commits first degree kidnapping commits a class 2 felony if, prior to his conviction, the person kidnapped was liberated unharmed.

---

[5]Plaintiff concedes that "he lacks a [sic] standing to assert whether or not a party has violated a criminal law, or to commence any type [of] criminal prosecution, in any court." Resp. ¶ 68. However, he "withdraws" his sixth claim only "in part . . . to the extent of pressing charges." *Id.* It is unclear from Plaintiff's response how this "withdrawal" affects the claim against APD; accordingly, the Court will proceed to determine whether he states a plausible claim.

Colo. Rev. Stat. § 18-3-301.  "Colorado courts have been extremely cautious in recognizing private rights of action 'implied' by criminal statutes."  *Gammill v. United States*, 727 F.2d 950, 953 (10th Cir. 1984).  The Plaintiff cites and the Court has found no case in Colorado interpreting a private cause of action from Colo. Rev. Stat. § 18-3-301, and the Plaintiff has not asked the Court to infer a private cause of action.  *See id.* ("C.R.S. § 25–1–649 provides for a criminal fine ranging from five to one-hundred dollars. There is no indication that the legislature also intended to supplement this criminal penalty with a private civil right of action."); *see also Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913 (Colo. 1997) (where statute provides another remedy, courts will not infer a private cause of action); *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*, 171 F. Supp. 3d 1092, 1116 (D. Colo. 2016) ("Though a provision of a criminal penalty does not necessarily preclude implication of a private cause of action, a 'bare criminal statute,' which contains absolutely no indication that a civil remedy is available, does not provide a basis from which to infer a private cause of action.") (quoting *Chafin v. Stasi*, 2015 WL 1525542, at *16 (D. Colo. Mar. 31, 2015)). Accordingly, the Court finds Plaintiff lacks standing to bring his sixth claim for relief against APD. *See Mamer v. Collie Club of Am., Inc.*, 229 F.3d 1164, 2000 WL 1114237 at *2 (10th Cir. 2000) ("As to her allegations of criminal activity, we have concluded, as did the district court, that private citizens cannot prosecute criminal actions.") (citing *Higgins v. Neal*, 52 F.3d 337, 1995 WL 216920, at *1 (10th Cir. Apr. 12, 1995) for the proposition that "[b]ecause allowing private citizens to initiate prosecutions would undermine prosecutorial discretion and the authority of federal prosecutors, we conclude [the defendant] lacks standing to maintain this criminal action").

    B.    <u>Claim for "False Arrest"</u>

    With respect to the first claim for false arrest, Plaintiff alleges that he was "arrested and charged with Attempted Murder and several counts of assault" on November 18, 2011.  Compl. ¶

12.  APD contends that Plaintiff's claim is barred by the applicable two-year statute of limitations. "Although timeliness is an affirmative defense . . . a complaint is subject to dismissal for failure to state a claim if the allegations show the applicable statute of limitations bars relief."  *Spencer v. Fromme*, 777 F. App'x 916, 920 (10th Cir. 2019) (citing *Chance v. Zinke*, 898 F.3d 1025, 1034 (10th Cir. 2018)).

The statute of limitations for a claim brought pursuant to 42 U.S.C. § 1983 in Colorado is two years.  *Canfield v. Douglas Cty.*, 619 F. App'x 774, 777 (10th Cir. 2015) ("In § 1983 actions we apply the forum state's statute of limitations for personal-injury claims . . . . Colorado, the forum state here, provides a two-year statute of limitations for personal-injury claims.") (citing Colo. Rev. Stat. § 13–80–102).  For purposes of determining the proper accrual date for a statute of limitations, the Tenth Circuit has explained the difference between a claim for false arrest (or "false imprisonment")[6] and a claim for malicious prosecution:

> What separates the two claims?—the institution of legal process. Unreasonable seizures imposed without legal process precipitate Fourth Amendment false imprisonment claims. *See Wallace*, 549 U.S. at 389 (concluding that false imprisonment was the proper analogy where defendants did not have a warrant for the plaintiff's arrest and thus detention occurred without legal process). Unreasonable seizures imposed with legal process precipitate Fourth Amendment malicious-prosecution claims. *See Heck* [*v. Humphrey*, 512 U.S. 477, 484 (1994)] (where detention occurs with legal process the "common-law cause of action for malicious prosecution provides the closest analogy"). Like rain and snow, the claims emanate from the same source, but under different conditions.

*Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013), *as amended on denial of reh'g* (Jan. 8, 2014), *cert denied*, 573 U.S. 932 (2014).  The court clarified that "legal process" constitutes "arrest[] pursuant to a validly issued—if not validly supported—arrest warrant." *Id.* at 1195; *see also Wilkins*

---

[6]The Supreme Court in *Wallace v. Kato*, 549 U.S. 384 (2007) explained that "[f]alse arrest and false imprisonment overlap; the former is a species of the latter" and, thus, the Court "refer[red] to the two torts together as false imprisonment." *Id.* at 389.

*v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) ("[T]he issuance of an arrest warrant represents a classic example of the institution of legal process.").   Here, Plaintiff does not specify in the Complaint whether he was arrested pursuant to a warrant; instead, construing his allegations liberally, the Court finds Plaintiff alleges only that the police report and information following his arrest contained false information.   Compl. ¶¶ 43, 107, 110.   The briefing on this issue does not illuminate the question; Plaintiff does not mention by what process, if any, he was arrested and APD does not specify its own knowledge, if any, about how Plaintiff was arrested.   Accordingly, the Court finds the Complaint, liberally construed, alleges Plaintiff was arrested without legal process and, thus, his claim is properly characterized as a false arrest claim in violation of the Fourteenth Amendment.   *See Myers*, 738 F.3d at 1194.

"A claim of false imprisonment accrues when the alleged false imprisonment ends."   *Id.* (citing *Wallace*, 549 U.S. at 389).   "[A] false imprisonment ends once the victim becomes held pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges."   *Wallace*, 549 U.S. at 389.   In this case, Plaintiff alleges his arraignment occurred on January 28, 2013. Compl. ¶ 113.   Apparently in support of his due process claim, Plaintiff contends that the arraignment was untimely; however, Plaintiff does not argue or otherwise indicate that such untimeliness invalidates the arraignment.   Accordingly, Plaintiff was required to file his false arrest claim on or before January 28, 2015, but the operative Complaint was not filed until January 13, 2020.   Therefore, Plaintiff's claim against APD is barred unless Plaintiff demonstrates he is entitled to equitable tolling of the statute of limitations.

The Tenth Circuit has instructed that state law governs equitable tolling in a § 1983 action. *Jenkins v. Chance*, 762 F. App'x 450, 456 (10th Cir.), *cert. denied*, 140 S. Ct. 443, 205 L. Ed. 2d 255 (2019) (citing *Alexander v. Oklahoma*, 382 F.3d 1206, 1217 (10th Cir. 2004)).   "Under

Colorado law, 'equitable tolling of a statute of limitations is limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts.'" *Id.* (quoting *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 149 (Colo. 2007)).  In this case, Plaintiff identifies no conduct on the part of APD that would support an argument that it "wrongfully impeded" him from filing his false arrest claim.  Moreover, although Plaintiff pled not guilty by reason of insanity in 2013, which implicates his mental competence at that time, the Tenth Circuit has "never found equitable tolling based on a claimant's mental capacity." *United States v. Howard*, 800 F. App'x 679, 680 (10th Cir. 2020) (citing *Harms v. IRS*, 321 F.3d 1001, 1006 (10th Cir. 2003)).  But, even assuming that "mental disease and intellectual deficits could justify equitable tolling" (*see id.*), Plaintiff's allegation, taken as true, asserts, "Dr. John DeQuardo performed the psychiatric evaluation on May 2, 2013 that found [Plaintiff] SANE."  Compl. ¶ 16 (emphasis is original).  He also argues he "was not found insane during the alleged offense by Dr. John DeQuardo."  Resp. ¶ 70.  Thus, Plaintiff has not demonstrated he is entitled to equitable tolling with respect to his false arrest claim.

The Court notes that, even if Plaintiff's claim may be construed as a malicious prosecution claim (i.e., arrest pursuant to a warrant), it is not plausible as alleged.  A malicious prosecution claim accrues when the criminal proceedings have terminated in the Plaintiff's favor. *Myers*, 738 F.3d at 1194 (citing *Heck*, 512 U.S. at 489).  Here, Plaintiff alleges he entered into a plea agreement in which he pled guilty to second degree assault and not guilty by reason of insanity to first degree assault.  Compl. ¶¶ 13-15.  Typically, a guilty plea is not a termination in favor of the accused for purposes of a malicious prosecution claim. *Guinn v. Unknown Lakewood Police Officers*, No. 10-cv-00827-WYD-CBS, 2010 WL 4740326, at *5 (D. Colo. Sept. 30, 2010), *report and*

*recommendation adopted*, 2010 WL 4740316 (D. Colo. Nov. 16, 2010) (citing *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 418 (2d Cir. 1999)); *see also Andrade v. Miami Dade Cty.*, No. 09-23220-CIV, 2010 WL 4069128, at *3 (S.D. Fla. Sept. 30, 2010) (an adjudication of "not guilty by reason of insanity" is "a disposition that is not considered favorable" for purposes of a malicious prosecution claim).  Plaintiff challenges the constitutionality of the plea agreement here but, for purposes of this analysis, there is no indication that Plaintiff's criminal proceedings have terminated in his favor and, thus, Plaintiff fails to state a plausible claim.

Nevertheless, even if the false arrest claim were not barred by the statute of limitations, the Court finds Plaintiff does not state a plausible claim against APD under *Monell*.  A municipality can be directly sued under § 1983 when its officers commit constitutional violations in accordance with the municipality's official policy. *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1104 (10th Cir. 2009) (citing *Monell*, 436 U.S. at 690).  However, as the Tenth Circuit has acknowledged, "liability will not attach 'where there was no underlying constitutional violation by any of [the municipality's] officers.'" *Id.* (quoting *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006)). Here, Plaintiff alleges no constitutional violation by any Arvada police officer; rather, he alleges "Defendants and their employees falsely arrested the Plaintiff at a local McDonalds without probable cause" (Compl. ¶ 60) and ". . . the Arresting Police from the Arvada Police Station made a false arrest without probable cause. The allegations contained in the police report only support the factual conclusion that the Defendants attempted to fabricate evidence consisting of misplaced and forensically impossible police report" (*id.* ¶ 107).  The Court finds these allegations conclusory and not entitled to a presumption of truth for purposes of this analysis.  Moreover, Plaintiff argues in his response brief that

> Arvada Police Department had in fact imprisoned Plaintiff under false pretenses and
> furthered this policy after his arrest. Defendant Arvada Police Department provided

17

> fabricated evidence and participated in implementing an "added fifth count" that was essentially made of whole cloth, and otherwise operated as a sentencing enhancement consisting of a double punishment not authorized by law.

Resp. ¶ 39.   Plaintiff does not identify "this policy" other than possibly that APD "imprisoned Plaintiff under false pretenses"; the Court finds this argument and Plaintiff's allegations conclusory and insufficient to support a claim against the police department under *Monell*.

C.      Summary

In sum, the Court finds that Plaintiff fails to state plausible claims for "kidnapping" and for false arrest (or malicious prosecution) against APD.  The Court will grant APD's motion to dismiss the claims with prejudice and direct the Clerk of the Court to remove APD from the case caption.

**III.    State Defendants' Motion to Dismiss**

The remaining four Defendants, characterized as the "State Defendants," seek dismissal of all seven claims against them arguing the Court lacks subject-matter jurisdiction over claims barred by the Eleventh Amendment and/or by the doctrines set forth in *Younger v. Harris*, 401 U.S. 37 (1971) or in *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S.462, 482 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) ("*Rooker-Feldman*"), depending on the circumstances at the time of the Court's order.  Defendants also contend that any state law claims are barred by the CGIA and that, alternatively, Plaintiff fails to state plausible claims for relief.

Plaintiff counters that he seeks prospective injunctive and declaratory relief consistent with the exception to Eleventh Amendment immunity set forth in *Ex parte Young*, 209 U.S. 123 (1908); there are no ongoing state court proceedings so *Younger* abstention is not warranted; the favorable termination rule in *Heck* does not apply; and, Judge McNulty did not perform judicial acts and, thus, he is not entitled to immunity.  Defendants reply that Plaintiff's claims seek retroactive relief, in the form of the Court's rendering the plea agreement void, and therefore the Eleventh Amendment bars

18

his claims; Plaintiff admitted at the May 14, 2020 status conference that his state court proceeding is ongoing by informing the Court that he must appear before the state court for a risk assessment hearing; to the extent the state proceeding has ended, the Court lacks jurisdiction pursuant to *Rooker-Feldman*; and, Plaintiff's claims are barred by the two-year statute of limitations. The Court will begin by determining whether it has jurisdiction to hear Plaintiff's claims for relief.

A.   Sovereign Immunity

"It is well established that under the Eleventh Amendment, sovereign immunity prohibits federal courts from entertaining suits against states brought by their own citizens or citizens of another state without their consent." *Hunt v. Colorado Dep't of Corr.*, 271 F. App'x 778, 780 (10th Cir. 2008) (citing *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)).

> The Eleventh Amendment is not without exceptions, however, as pursuant to its powers under Section Five of the Fourteenth Amendment, Congress may enact a statute abrogating a state's Eleventh Amendment immunity if the text of the statute explicitly manifests a desire to do so. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). A state may also waive its Eleventh Amendment immunity through a clear expression of its intent to waive. *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

Id. at 780–81. Congress has not abrogated Eleventh Amendment immunity through Section 1983 (*id.* at 781 (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)), and there is no indication that the official-capacity State Defendants have expressly waived their sovereign immunity. "State sovereign immunity is more than immunity from liability—it actually deprives federal courts of subject-matter jurisdiction." *Wood v. Milyard*, 414 F. App'x 103, 105 (10th Cir. 2011).

Plaintiff sues the remaining "State Defendants" in their official capacities.[7] ECF 1 at 9. Claims against state officials in their official capacities are essentially claims against the state entity.

---

[7]No party disputes that these Defendants are "state" officials acting in their capacities as employees of the State of Colorado.

19

*Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted); *see also Bueno v. Chekush*, 355 F. Supp. 3d 987, 997 (D. Colo. 2018) ("Sovereign immunity extends to state agencies functioning as an arm of the state, including the CDOC.  To the extent Defendants are being sued in their official capacities, they may assert Eleventh Amendment immunity as an arm of the state in that they assume the identity of the CDOC." (citations and quotations omitted)).

As argued by the Plaintiff, the Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff seeks ***prospective*** enforcement of his or her federal rights.  *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (emphasis added).  But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages.  *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Plaintiff contends that he seeks only prospective injunctive relief, which is not barred by the Eleventh Amendment.  As relief for his claims, Plaintiff seeks a "judgment in his favor against Defendants . . . :

a) For appropriate relief at law and equity;

b) For a permanent restraining order against the Defendant's and his biological family, preliminary and permanent injunction, enjoining and restraining Defendants from engaging in the policies, practices and conduct complained of here, and other appropriate equitable relief;

c) For a declaratory judgment that Defendants' policies, practices and conduct as alleged here violate Plaintiffs' [sic] rights under the United States and Colorado Constitution and laws of the state and federal government;

d) For declaratory judgment exonerating the plaintiff from his convictions, vacating the Not Guilty by Reason of Insanity (NGRI) Adjudication and order the Department

of Human Services and the Colorado Mental Health Institute in Pueblo, Colorado to
release him from the order of commitment;

e) Prospective Injunctive relief barring any type of involuntary commitment to any
hospital or institution;

f) For Compensatory Damages of 70,000 USD for every year incarcerated and
30,000 USD for every year spent on parole.

g) Punitive damages to be determined according to proof or for an amount to be
determined at trial;

h) Attorneys' fees and the costs associated with this action on all claims pursuant to
42 U.S.C. § 1988 and all applicable law;

i) Any further relief that this Court deems just and proper, and any other relief as
allowed by law."

Compl. at 24-25.  Of these requests for relief, the Court finds sections (a), (b), (h), and (i) irrelevant

or vague and insufficient for an analysis pursuant to *Ex parte Young*.  Sections (c) and (d) seek relief

that would require a declaration that at least one of the State Defendants has violated Plaintiff's

rights in the past (i.e., by creating, imposing, enforcing, and/or coercing Plaintiff into executing the

"split" plea agreement) and, therefore, these requests are barred by the Eleventh Amendment.

*Buchwald*, 159 F.3d at 495.  Likewise, sections (f) and (g) seek monetary damages and are barred

by the Eleventh Amendment.  *Id.*  Construed liberally, section (e) seeks an injunction barring "any

type" of future involuntary commitment; however, to seek prospective relief, a plaintiff must

demonstrate he is "suffering a continuing injury or be under a real and immediate threat of being

injured in the future."  *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004).  A simple

claim for a future injury constitutes mere speculation or conjecture and does not warrant invocation

of jurisdiction.  *See O'Shea v. Littleton*, 414 U.S. 488, 497 (1974); *see also City of Los Angeles v.*

*Lyons*, 461 U.S. 95, 111 (1983) ("The speculative nature of [plaintiff's] claim of future injury

requires a finding that this prerequisite of equitable relief has not been fulfilled.").

21

Here, Plaintiff's stated "injury" is that he has been wrongfully and involuntarily committed to the CMHIP and continues to suffer this injury every day.  Section (e), as stated, assumes a speculative future injury ("any type of involuntary commitment to any hospital or institution") and is improper.  However, even if the Court were to construe section (e) as a proper request for prospective injunctive relief excepted from Eleventh Amendment immunity by *Ex parte Young*—i.e., in the form of an order for release of the Plaintiff from the CMHIP—the  Court has found such relief may not be sought in an action pursuant to 42 U.S.C. § 1983, but must be sought in a habeas corpus action.  *Boutwell*, 399 F.3d at 1209 ("A prisoner may use § 1983 to challenge the *conditions* of his confinement, but habeas corpus is the only avenue for a challenge to the *fact or duration* of confinement, at least when the remedy requested would result in the prisoner's immediate or speedier release from that confinement.") (emphasis in original); *see also Duncan v. Walker*, 533 U.S. 167, 176 (2001) ("[F]ederal habeas corpus review may be available to challenge the legality of a state court order of civil commitment or a state court order of civil contempt.") (citing *Francois v. Henderson*, 850 F.2d 231 (5th Cir. 1988) (entertaining a challenge brought in a federal habeas petition under § 2254 to a state court's commitment of a person to a mental institution upon a verdict of not guilty by reason of insanity)).

The Court finds the Eleventh Amendment bars Plaintiff's claims for relief against the State Defendants in their official capacities.  *See Harris v. Owens*, 264 F.3d 1282, 1290 (10th Cir. 2001) ("A suit within the *Ex parte Young* doctrine is not considered a suit against the state; rather, it is a suit against individual state officers who are stripped of their official character.") (citation omitted). The Court lacks subject-matter jurisdiction over the Plaintiff's claims and they will be dismissed without prejudice.

B.      Abstention

The State Defendants also assert that this Court lacks jurisdiction and must abstain from

hearing Plaintiff's claims, which seek to overturn a state court judgment, either because the state

proceedings are not final or because they are final and Plaintiff wrongfully seeks review and

rejection of the state judgment.

Here, it is undisputed that Plaintiff alleges he was wrongfully charged, coerced to plead

guilty, and improperly sentenced in state court to his current commitment at the CMHIP.   The

parties dispute whether the state proceedings have terminated; the Court finds that even if they have

(as Plaintiff contends[8]), most of his claims are barred by the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine . . . provides that only the Supreme Court has jurisdiction to

hear appeals from final state court judgments."   *Mayotte v. U.S. Bank Nat'l Ass'n for Structured*

*Asset Inv. Loan Tr. Mortg. Pass-Through Certificates, Series 2006-4*, 880 F.3d 1169, 1173 (10th Cir.

2018) (quoting *Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006)).   A federal district court is

precluded from exercising subject-matter jurisdiction to hear litigation in which "the losing party

---

[8]Plaintiff states, "[t]here are no ongoing state court proceedings." Resp. ¶ 22.  He asserts that
his appeal concluded on February 13, 2020 and attaches an incomplete copy of the appellate court's
opinion of the same date.  *See* ECF 37 at 15-21.  Plaintiff claims that the only issues raised on appeal
were that the "trial court errored [sic] in denying [his] 35(c) motion without a hearing, and [a]
clerical error that 'Kirchner's judgment . . . incorrectly state[s] that Kirchner pleaded guilty to first
degree assault with a deadly weapon.'" Resp. ¶ 22.  Thus, Plaintiff argues that his claims here have
not been adjudicated by the state appellate court. This Court is not convinced.  First, the attached
copy of the opinion includes only the even-numbered pages and the decision is not published;
therefore, the Court does not have a full copy of the decision to determine whether Plaintiff's
argument is supported.  Second, the pages of the decision attached to the response demonstrate the
appellate court's findings that the trial court "properly rejected" Plaintiff's due process, equal
protection, and cruel and unusual punishment claims as "conclusory"; any due process claim
involving Plaintiff's sentence was "waived" by his guilty plea; and Plaintiff's "double jeopardy"
claim was insufficient because the court concluded he "is not suffering multiple punishments for the
same offense."  *See* ECF 37 at 20-21.  Without the full decision, the Court cannot make a
determination, but the attached pages reflect the possibility that certain of Plaintiff's challenges may
have been addressed by the Colorado Court of Appeals.

in state court filed suit in federal court after the state proceedings ended, complaining of an *injury caused by the state-court judgment* and seeking review and rejection of that judgment." *Id.* at 1174 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)) (emphasis in original).  Essentially, ". . . barred claims are those complaining of injuries caused by state-court judgments. In other words, an element of the claim must be that the state court wrongfully entered its judgment." *Id.* (quoting *Campbell v. City of Spencer*, 682 F.3d 1278, 1280 (10th Cir. 2012)).

Here, the first claim for relief alleges that "[f]or both count 2 and the added count 5 [state] trial court had no factual basis to charge the Plaintiff. . . . This caused a complete absence of state corrective process [and] inflicted a grave miscarriage of justice on the behalf of the Plaintiff." Compl. ¶¶ 61-62.  Plaintiff's second claim alleges, "Plaintiff was forced into an unconstitutional plea agreement labeled 'split plea,' subsequently violating double jeopardy; attaching after [state] trial court accepted it's [sic] proposed 'split plea' agreement and imposed a sentence not authorized by law."  Compl. ¶ 64.  His fourth claim alleges, "[State] trial court has inflicted a cruel and unusual punishment to serve TWO separate sentences for the same crime."  Compl. ¶ 91.  His fifth claim alleges he "has completed his sentence to CDOC and now is serving another sentence for the same crime . . . without psychiatric need for hospitalization. . . . Plaintiff was denied the equal protection enjoyed by all those that plea NGRI."  Compl. ¶¶ 93-94.  His sixth claim alleges, "Jefferson County District Court and others, under color of state law, WILLFULLY . . . deprive[d] [Plaintiff] of his rights . . . through criminal acts of kidnapping."  Compl. ¶ 100.  The Court finds these claims seek to overturn the state court judgment imposing the sentence from which Plaintiff is currently committed to the CMHIP and, thus, to the extent that the state proceedings have completed as

Plaintiff contends and in the event the claims were not barred by the Eleventh Amendment,[9] they are barred by the *Rooker-Feldman* doctrine.  The Court finds it would lack jurisdiction and dismiss Plaintiff's first, second, fourth, fifth, and sixth claims as currently stated without prejudice.

C.      CGIA

With respect to the seventh claim for relief alleging negligence (breach of the duty of care) against the superintendent of CMHIP, Jill Marshall (to the extent the claim is not barred by the Eleventh Amendment), Defendants assert that Plaintiff failed to file a notice of claim as required by the CGIA.

Under the CGIA, public entities and their employees are immune from claims which lie or could lie in tort, unless the employee's conduct was willful or wanton or where a waiver of immunity has been established.  Colo. Rev. Stat. §§ 24-10-105, 24-10-106.  Sovereign immunity issues concern subject-matter jurisdiction and, thus, are determined in accordance with Rule 12(b)(1).  *See Springer v. City & Cty. of Denver*, 13 P.3d 794, 798 (Colo. 2000) (en banc) (citing *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1383-84 (Colo. 1997)).

Prior to bringing an action covered by the CGIA, a plaintiff is required to file a notice of claim within 182 days of discovering the alleged injury.  Colo. Rev. Stat. § 24–10–109(1).  "Absent compliance with the 180–day notice requirement, governmental immunity bars suit against the public entity because a trial court lacks subject-matter jurisdiction over the complaint seeking relief."  *City & Cty. of Denver v. Crandall*, 161 P.3d 627, 632 (Colo. 2007) (en banc) (citations

---

[9]For example, Plaintiff's claims against the State Defendants would not be barred by the Eleventh Amendment if construed as asserted against them in their individual capacities.  *See Cornforth v. Univ. of Oklahoma Bd. of Regents*, 263 F.3d 1129, 1132 (10th Cir. 2001) ("As a general rule, suits seeking damages from state officials in their individual capacities are not barred by the Eleventh Amendment.").  Here, the Plaintiff specifically alleges that the individual Defendants are sued in their official capacities.

omitted).  Plaintiff neither alleges nor argues that he has filed the notice of claim required by the

CGIA.  In addition, Defendants have submitted evidence that Plaintiff filed no such notice. Affidavit

of Tammy Adams, ¶ 5, ECF 33-1 ("A search of our  records in our electronic database shows that

our office has  not

received any  Notice of Claim from Jesse Dillon Kirchner naming any of the  defendants named in

the caption above.").  Therefore, if the claim were not barred by the Eleventh Amendment, the Court

must conclude that it would lack subject-matter jurisdiction to hear Plaintiff's seventh claim for

negligence, as currently stated, against Defendant Marshall.  *See Crandall*, 161 P.3d at 633 ("If a

claimant fails to comply [with the CGIA notice-of-claim provision], a court must dismiss the matter

for lack of subject matter jurisdiction.").

       D.     <u>Failure to State a Claim</u>

       If it were not barred by the Eleventh Amendment, the Court would find Plaintiff's third claim

for relief for ineffective assistance of counsel against Jefferson County public defenders Stohs and

Oliver insufficient to state a plausible claim for relief.

       First, Plaintiff alleges that Stohs represented him at the time he entered the plea agreement

in December 2013.  Compl. ¶ 8.  Taking the allegations as true,[10] any claims brought under 42

U.S.C. § 1983 based on this representation are barred by the statute of limitations.  *Canfield*, 619

F. App'x at 777 ("In § 1983 actions we apply the forum state's statute of limitations for

personal-injury claims . . . . Colorado, the forum state here, provides a two-year statute of limitations

for personal-injury claims."); *see also Banks v. Sec'y, Fla. Dep't of Corr.*, 592 F. App'x 771, 773

(11th Cir. 2014) (district court was correct that claim for ineffective assistance of post-conviction

---

      [10]Notably, Plaintiff alleges no specific conduct (or misconduct) by Stohs in the Complaint;
construed liberally, the pleading may allege that she was involved in preparing and/or "coercing"
Plaintiff to execute the "unlawful" split plea agreement.

counsel was barred by the statute of limitations).  Plaintiff makes no allegation or argument as to when his claim accrued and whether he is entitled to equitable tolling.

Second, Plaintiff alleges that Oliver had a conflict of interest in that she "worked in the same office as Miriam Stohs" (against whom Plaintiff had apparently filed an ineffective assistance of counsel claim in state court) and breached the ADC contract as soon as she accepted it.  Compl. ¶¶ 87-88.  According to the allegations, Oliver "substituted as counsel" for Plaintiff on July 25, 2018 and withdrew on August 29, 2018 when Margaret Baker substituted as counsel.  *Id.* ¶¶ 26, 28.

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights under color of state law."  *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (internal quotation marks omitted).  "[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994) (quoting *Polk County v. Dodson*, 454 U.S. 312, 325 (1981)).  However, a public defender may act under color of state law if the alleged conduct may be construed as "administrative" or if he or she is "engaged in a conspiracy with state officials to deprive his [or her] client of constitutional rights."  *Id.* (citing *Tower v. Glover*, 467 U.S. 914, 920 (1984)).  In this case, Plaintiff does not allege that Oliver performed administrative functions or conspired with any state official(s) to deprive him of his constitutional right to effective assistance of counsel.  Moreover, there is no indication that Oliver performed other than traditional functions in representing Plaintiff during the nearly one-month period in 2018.  Therefore, Plaintiff fails to state a plausible claim under Section 1983 against Oliver.

In sum, the Court concludes that Plaintiff fails to state a third claim for relief (to the extent it is not barred by the Eleventh Amendment) against Stohs and Oliver.

27

Finally, the Court finds it possible to construe Plaintiff's seventh claim, at least in part, as a procedural due process claim against Marshall for her failure to provide Plaintiff a "post-deprivation hearing." *See* Compl. ¶ 116. To the extent this claim may be construed so that it is not barred by the Eleventh Amendment, the Court finds it fails to meet the requirements of Fed. R. Civ. P. 8 in giving Defendants fair notice of the nature of the claim.

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Where a state is "truly unable to anticipate and prevent a *random* deprivation of a liberty interest, postdeprivation remedies might satisfy due process." *Id.* at 132 (emphasis added); *see also Winters v. Bd. of Cty. Comm'rs*, 4 F.3d 848, 857 (10th Cir. 1993) ("The Supreme Court . . . clarified that an adequate post-deprivation remedy relieves due process concerns *only* for random and unauthorized deprivations of property.") (emphasis added). In other words, a post-deprivation hearing may constitute due process only when someone is deprived of his liberty without a pre-deprivation hearing. *Winters*, 4 F.3d at 857 ("the [Supreme] Court emphasized '[t]he controlling inquiry is solely whether the state is in a position to provide for predeprivation process.'"); *see also Albright v. Oliver*, 510 U.S. 266, 315 n.37 (1994). In this case, there is no dispute that Plaintiff was a defendant in state court criminal proceedings and executed a plea agreement from which his commitment to CMHIP arose. His commitment to CMHIP was not random. *See Winters*, 4 F.3d at 857 ("Available postdeprivation procedures are insufficient to neutralize a due process violation when the action is planned and authorized."). Therefore, taking the allegations as true, Marshall was not required to provide Plaintiff a post-deprivation hearing to assure Plaintiff due process of the law in this case.

Moreover, "an adequate post -deprivation remedy—such as a state tort claim—will satisfy due process requirements." *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013). Here, as set forth above, Plaintiff's seventh claim for relief has been construed as a negligence claim—i.e., Marshall had a duty to perceive that Plaintiff's due process rights were violated by his commission to CMHIP but she did nothing about it. Thus, even if a post-deprivation remedy were required, Plaintiff had the ability to seek recovery through a properly stated negligence claim.

The Court finds Plaintiff has failed to state the requirements of a procedural due process claim against Marshall in his seventh claim for relief and, thus, he has failed to comply with Fed. R. Civ. P. 8. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) ("under Rule 8, '[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"); *see also Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces ... demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

E.   Summary

The Court lacks subject-matter jurisdiction to hear Plaintiff's claims, alleged against the State Defendants in their official capacities, because they are barred by the Eleventh Amendment. Accordingly, Plaintiff's claims as alleged against the State Defendants in the operative Complaint are dismissed without prejudice. To the extent the claims may be liberally construed as brought against the Defendants in their individual capacities, the Court has insufficient information to determine whether *Younger* abstention applies, but the Court would lack jurisdiction to hear certain claims, as currently alleged, which are barred by the *Rooker-Feldman* doctrine; the remaining claims would be found to be insufficient to state plausible claims for relief.

Typically, prisoners proceeding *pro se* also proceed *in forma pauperis* and their initial pleadings are "screened" in accordance with 28 U.S.C. § 1915.  Here, the operative pleading is the Plaintiff's first Complaint and he paid the filing fee in this case; thus, his pleading was not initially screened for any deficiencies and he did not have the ability to cure them.

Under these circumstances, the Court finds it proper to grant Plaintiff leave to file an Amended Complaint to the extent that he may possibly cure some of the deficiencies identified herein with respect to the State Defendants.  In this jurisdiction, a court typically does not dismiss a claim, particularly if the plaintiff proceeds pro se, until the plaintiff has been provided notice and an opportunity to amend the complaint to cure defective allegations.  *See Bellmon*, 935 F.2d at 1109–10; *see also Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) ("[d]ismissal of a pro se complaint . . . is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend.").  Plaintiff may file such Amended Complaint on or before September 10, 2020.

## CONCLUSION

The Court finds Plaintiff fails to demonstrate the requirements necessary to seek preliminary injunctive relief in this case and, thus, his Motion for Preliminary Injunction [filed June 15, 2020; ECF 44] is **denied**.

In addition, Plaintiff fails to state plausible claims for relief against the Arvada Police Department ("APD") and, therefore, its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b) [filed April 17, 2020; ECF 25] is **granted** and Plaintiff's claims against the APD are dismissed with prejudice.  The Clerk of the Court is directed to remove APD as a Defendant in this case.

Finally, the Court lacks subject-matter jurisdiction to hear Plaintiff's claims as alleged against the State Defendants in their official capacities, because they are barred by the Eleventh

Amendment.  Therefore, the State Defendants' Motion to Dismiss [filed April 29, 2020; ECF 33] is **granted** and Plaintiff's claims against the State Defendants are dismissed without prejudice. Because the pro se Plaintiff has not had an opportunity to amend following "initial screening" in this case, he is granted leave to file an Amended Complaint, if he determines that he may cure the deficiencies identified herein, on or before September 10, 2020.

Dated at Denver, Colorado, this 10th day of August, 2020.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge